<u>NOT FOR PUBLICATION</u>

**FILED**

JAMES J. WALDRON, CLERK

**OCT. 27, 2009**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  <u>s/ Ronnie Plasner,</u> DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:

**MARKSON ROSENTHAL &**
**COMPANY, INC.,**

                              Debtor.

---

**MR WIND DOWN COMPANY, INC.**
**formerly known as MARKSON**
**ROSENTHAL & COMPANY, INC., a**
**New Jersey corporation,**

                       Plaintiff,

v.

**ROCK-TENN CONVERTING**
**COMPANY, a corporation of the State of**
**Georgia,**

                       Defendant.

Case No.:   06-13163 (DHS)

Adv. No.:   06-01899 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Cole, Schotz, Meisel, Forman & Leonard, P.A.
Ilana Volkov, Esq.
Court Plaza North
25 Main Street
P.O Box 800
Hackensack, New Jersey 07602-0800
***Counsel for Defendant***


Becker Meisel, LLC
Joseph G. Harraka, Esq.
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 2800
Livingston, New Jersey 07039
***Co-Counsel for Plaintiff***


Drinker Biddle & Reath LLP
Robert K. Malone, Esq.
Douglas J. McGill, Esq.
500 Campus Drive
Florham Park, New Jersey 07932-1047
***Co-Counsel for Plaintiff***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

On June 7, 2006, MR Wind Down Company, Inc. f/k/a Markson Rosenthal & Company, Inc. (hereinafter "Debtor" or "MR") filed an amended adversary complaint against Rock-Tenn Converting Company (hereinafter "Rock-Tenn" or "Defendant") alleging: (i) Rock-Tenn is not entitled to a right of setoff under section 553(b)(1) of the Bankruptcy Code; (ii) if the right of setoff is recognized or a setoff already occurred, then the preferential transfer may be avoided pursuant to Section 547; and (iii) the property transfer constitutes a fraudulent conveyance under New Jersey state law.

Defendant filed the instant motion seeking the exclusion of MR's proposed expert and summary judgment. Specifically, the Defendant contends: (i) MR's expert opinion should be deemed inadmissible because it is based upon speculation and the wrong valuation method; (ii) MR is unable to prove insolvency on January 27, 2006, the date of the property transfer; (iii) MR's inability to prove insolvency prohibits Rock-Tenn's right to a setoff; (iv) MR's failure to demonstrate insolvency precludes a preferential transfer claim to Rock-Tenn under the Bankruptcy Code and New Jersey state law.

Plaintiff filed opposition arguing: (i) Rock-Tenn failed to rebut the presumption of insolvency provided by section 553(c); (ii) MR's proposed expert opinion should be admitted into evidence; and (iii) Rock-Tenn is not entitled to summary judgment on any of the three counts of the amended adversary complaint.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), (F), and (H).

Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.  For the reasons stated hereafter, the Defendant's summary judgment motion is denied in part and granted in part.

<u>**Statement of Facts and Procedural History**</u>

**A.     Defendant Rock-Tenn's Statement of Facts**

On January 27, 2006, MR and Rock-Tenn entered into an agreement whereby Rock-Tenn agreed to purchase MR's equipment and inventory used to provide services to Gillette Company for a price of $4,440,989.03. *Def.' Stmt. Pursuant to Local Rule 56.1* (hereinafter *"Def. Stmt."*) ¶¶ 1-2.  Rock-Tenn agreed to satisfy the negotiated price through a cash payment of $1,390,703.03 and a note for $3,050,286.00.  *Id.* at ¶ 4.  MR also issued a note for the same value representing a portion of the outstanding debt it owed to Rock-Tenn.  *Id.* at ¶ 5.  Both notes contained the right to a setoff; however, neither party exercised the right prior to MR filing for bankruptcy protection.  *Id.* at ¶¶ 6-7.

MR began reporting net losses in 2003.  *Id.* at ¶ 9.  In mid-2005, MR reported positive net income, but by late 2005, MR started making late payments to its vendors allegedly due to cash-flow problems.  *Id.* at 10-12.  Concurrently, Gillette, a major customer, decided not to renew its contract with MR.  *Id.* at ¶¶ 13.  As a result, MR began to evaluate its position for 2006 without the Gillette contract and decided to terminate its operations in Fairfield, Ohio. *Id.* at ¶¶ 14-15.  Based on the new projections, MR and its accountants projected positive net income for 2006-2008.  *Id.* at ¶¶ 25-26.

At the same time, MR began negotiating a restructured line of credit with Valley National Bank. *Id.* at ¶ 32.  MR provided Valley National Bank with its positive projections and belief that it would be able to survive.  *Id.* at ¶¶ 33-34.  As a result,  the bank and MR executed the Eighth

4

Modification to the Loan and Security Agreement on February 2, 2006.  *Id.* at ¶ 36.  MR's Chief

Executive Officer, Michael Rosenthal, believed the restructured line of credit would allow MR to

continue its operations.  *Id.* at ¶ 39.

In mid-February 2006, Sonoco sent MR a term sheet proposing to acquire MR for up to $8

million with $5.5 million in cash at the time of closing and $2.5 million to be paid later if MR met

its sales projections.  *Id.* at ¶ 41.  Additionally, Sonoco was willing to assume all of MR's accounts

payable less than ninety (90) days past due.  *Id*. at ¶ 42.  MR rejected this initial offer and made a

counteroffer to sell its business for $7.5 million paid at closing plus the assumption of trade payable.

*Id*. at ¶¶ 45-46.

At this time, MR believed that its business would continue and decided not to sell its

operations.  *Id.* at ¶ 47.  However, one month later, two of MR's customers delayed orders causing

further cash-flow problems.  *Id.* at ¶ 48.  MR's cash-flow problems could have been alleviated at this

time by financing from IDB Bank, which would have allowed MR to pay Valley National Bank.

*Id.* at ¶ 49.  Instead, MR decided to sell its business in March 2006 and approached Sonoco.  *Id.*  at

¶¶ 50-52.  Knowing MR's cash-flow problems, Sonoco exerted more leverage and offered to

purchase MR's assets for only $5 million.  *Id*. at ¶¶ 53-55.  The asset purchase agreement also

required MR to file for bankruptcy protection and seek approval of the sale under section 363 of the

Bankruptcy Code.  *Id.* at ¶ 56.  On April 14, 2006, MR filed a voluntary petition under Chapter 11.

The Court approved the sale of MR's assets to Sonoco on May 24, 2006.  *Id.* at ¶ 62.

During discovery, both parties retained experts to determine whether MR was insolvent on

January 27, 2006, the date of its agreement with the Defendant.  *Id.* at ¶¶ 63-64.  Charles Phillips,

Rock-Tenn's expert, used the discounted cash-flow and income capitalization methods to determine

that MR was solvent based upon the cash-flow and net-income projections MR provided to third parties during this period. *Id.* at ¶ 63. Conversely, Lawrence Leaf, MR's expert, used a liquidation analysis to determine that MR was insolvent as of January 27, 2006. *Id.* at ¶¶ 64, 67-68. Leaf purportedly did not make an independent appraisal of the equipment and inventory sold to Sonoco and instead relied upon the sale price obtained by Sonoco in May 2006. *Id.* at ¶¶ 68-69. Leaf also allegedly did not investigate MR's projections or prepare a cash-flow statement. *Id.* at ¶¶ 73, 77. Further, Defendants note Leaf's testimony was excluded in an unrelated case for failure to make an independent evaluation and for lack of specialized knowledge. *Id.* at ¶¶ 82-83.

**B.      Plaintiff MR's Disputed and Additional Facts**

In 2005, MR claimed it was operating in a negative working capital situation. *Cert. of Joseph G. Harraka, Jr.* (hereinafter *"Harraka Cert."*) ¶ 3. MR's Chief Financial Officer, Ken Siletski, testified in his deposition that MR bounced checks to its suppliers resulting in the tightening of credit terms. *Id.* at ¶ 5. In addition, MR's accounts at Valley National Bank were overdrawn during 2005. *Id.* at ¶ 9.

The financials Rock-Tenn relies upon were not verified by MR's accounting firm. *Id.* at ¶ 12. MR's accounting approach allowed various costs to be characterized in a fashion to make the company's future operations look stronger to customers, lenders, and potential buyers. *Id.* at ¶ 14. MR further notes that their accountant's projections were based on overly optimistic assumptions made by MR's senior management and were not independently reviewed by the accountant, Joseph Cline. These projections envisioned positive net income even without Gillette as a customer. *Id.* at ¶¶ 18-19.

Rock-Tenn's expert, Charles Phillips, based the entirety of his opinion on MR's cash-flow projections and a projected profit and loss statement. *Id.* at ¶ 20-21. However, MR contends that these projections and statements were incomplete and based on false assumptions whereby various line items and cash expenditures were missing. *Id.* at ¶ 22. The cash-flow projections also failed to make any allowance for capital expenditures, which would be necessary on a going forward basis, as recognized by Defendant's expert. *Id.* at ¶¶ 30-32. Further, MR's officers believed the projections were reasonable, although, they noted that they were "flexible" or "working" projections. *Id.* at ¶ 43-44. With respect to the profit and loss statement, they failed to include annual costs for key plant locations. *Id.* at ¶ 40.

Moreover, MR's term sheet for the Sonoco agreement excluded many of MR's obligations under existing property leases and contained many conditions and proposed adjustments to the purchase price. *Id.* at ¶¶ 51-52. In a telephone conversation between MR's Chief Financial Officer and Sonoco's Chief Executive Officer, Sonoco believed that MR was insolvent as of February 2006. *Id.* at ¶ 54. During this conversation, MR again contended that it could turn its operations around, but Sonoco disagreed. *Id.* at ¶ 57. MR purports that Rock-Tenn fails to acknowledge the circumstances of MR's sales projections fully in that the projections were based on discussions prior to Gillette's contract cancellation. *Id.* at ¶¶ 62-63.

Lawrence Leaf, MR's expert on insolvency, analyzed MR's condition based on its inability to continue as a going concern. *Id.* at ¶ 64. He considered numerous indicators including internal and external events and difficulties experienced by MR to show its poor financial condition. *Id.* at ¶¶ 65-68. MR contends Rock-Tenn's expert failed to consider these same indicators. *Id.* at ¶ 65-74.

7

## Discussion

**A.     Admissibility of Expert Testimony**

Both Rock-Tenn and MR move to exclude the testimony of the other's expert.  Federal Rule

of Evidence 702 governs the admissibility of expert testimony stating:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed. R. Evid. 702.

Relying upon the seminal case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Third

Circuit summarized Rule 702 to require the analysis of qualification, fit, and reliability.  *See Brown*

*v. Southeastern Pa. Transp. Authority (In re Paoli R.R. Yard PCB Litig.)*, 35 F.3d 717, 741-43 (3d

Cir. 1994) (citing *Daubert v. Merrel Dow Pharm., Inc.* 509 U.S. 579 (1993)); *see also Schneider v.*

*Fried*, 320 F.3d 396, 404 (3d Cir. 2003).   First, this Circuit defines qualification as "specialized

expertise" and possessing a "broad range of knowledge, skills, and training."  *Schneider*, 320 F.3d

at 404 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 741).  Second, fit requires "the expert's

testimony must be relevant [to] the purposes of the case and must assist the trier of fact."  *Id.*  Lastly,

reliability means that the testimony "must be based on the 'methods and procedures of science'

rather than on 'subjective belief or unsupported speculation.'"  *Id.* (citation omitted); *see Crisomia*

*v. Parkway Mortgage, Inc., (In re Crisomia),* 286 B.R. 604, 608 (Bankr. E.D. Pa. 2002) ("[T]he

opinion must be squarely grounded in the principles and methodology of the relevant discipline, no

matter how impressive the expert's credentials may be." (citation omitted)). The Third Circuit

further expanded the reliability analysis to include the following factors:

> (1) whether a method consists of a testable hypothesis; (2) whether
> the method has been subject to peer review; (3) the known or
> potential rate of error; (4) the existence and maintenance of standards
> controlling the technique's operation; (5) whether the method is
> generally accepted; (6) the relationship of the technique to methods
> which have been established to be reliable; (7) the qualifications of
> the expert witness testifying based on the methodology; and (8) the
> non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 n.8.

The trial judge performs a "gatekeeping" role in determining the admissibility of expert

testimony. *See Kannankeril v. Terminix Int'l,* Inc., 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert,*

509 U.S. at 589). The expert's admissibility is within the trial judge's discretion and it is incumbent

upon the proponent of the expert to "demonstrate by a preponderance of evidence that [the expert's]

opinions are reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744. Although the *Daubert*

standard specifies scientific or technical experts, this "gatekeeping" role applies to all expert

testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) ("*Daubert*'s general

holding—setting forth the trial judge's general "gatekeeping" obligation—applies not only to

testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other

specialized" knowledge.). Thus, as in the case at bar, bankruptcy judges serve as "gatekeepers"

when evaluating proposed experts on the subject of a company's valuation. *See, e.g.*, *In re Nellson*

*Nutraceutical, Inc.*, 356 B.R. 364, 377-78 (Bankr. D. Del. 2006).

In the instant matter, the setoff and preference claims require a finding of insolvency, which

is typically proven through expert analysis and testimony. Both Rock-Tenn and MR retained experts

who valued the Debtor as of the date of the transfer using different methods resulting in opposing

outcomes. Thus, in the instant motion, both parties now argue in favor of excluding the other's expert. As discussed in more detail below, to determine insolvency, experts use either a going concern or liquidation valuation method.

Specifically, Rock-Tenn seeks to exclude MR's expert, Lawrence Leaf, on the basis that Leaf failed to conduct analysis and simply based his opinion on the post-bankruptcy asset sale price. Rock-Tenn contends that Leaf's failure to prepare cash-flow statements, normalize earnings or investigate the causes behind the significant losses leaves Leaf's opinion rooted in speculation and, thus, provides grounds to exclude Leaf's testimony. On the other hand, MR argues that even though Rock-Tenn's expert, Charles Phillips, identified deficiencies in MR's projections and reports, Phillips still blindly relied upon the admittedly faulty projections and profit/loss statements produced by MR. Further, MR demonstrates that Leaf attempted a going concern valuation and, given MR's accounting methods and financial status, he was unable to do so, resorting to a liquidation analysis. MR also argues that, based on the liquidation method, Leaf's analysis was appropriate and did not require the normalization of earnings. MR concludes Leaf's valuation was correct and, therefore, Phillips should be excluded.

In the instant matter, both the qualification and reliability of Leaf and Phillips are contested. Both experts relied upon Debtor's admittedly faulty projections characterized as "working" and "flexible." "Where an expert relies on altered facts, speculation, and volatile projections or fails to consider relevant facts in reaching a conclusion the expert's opinion can offer no assistance to the trier of fact and is excluded as irrelevant." *In re Nellson Nutraceutical, Inc.*, 356 B.R. at 367. Here, it may be argued that both experts' opinions should be excluded for failing to meet the requirements

of *Daubert*.  However, it is also plausible that the methods used were accurate but the facts used by the experts were incorrect or unreliable.

As evidenced in the discussion on insolvency below, issues of fact abound and excluding either expert at this juncture is premature.  When the underlying methodology is reliable but questions of fact arise about the assumptions made by the experts, then "the gatekeeper function is not a substitute for testing the assumptions underlying the expert witness' testimony on cross-examination."  *Lichtenstein v. Anderson (In re Eastern Continuous Forms, Inc.),* 2004 U.S. Dist. LEXIS 21696, at *15 (E.D. Pa. October 28, 2004) (citing *United States v. Mitchell,* 365 F.3d 215, 245 (3d Cir. 2004)).  Rock-Tenn's motion to exclude Lawrence Leaf is denied and MR's motion to exclude Charles Phillips is denied.  This Court will hear their testimony, evaluate it under challenge of cross-examination, and determine the weight to be accorded under the circumstances.

**B.    Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial."  *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,

587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.

Thus evidence whose foundation is deficient must be excluded from consideration." *Williams v.*

*Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of

material fact.  *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish

the existence of [every] element essential to the party's case, and on which that party will bear the

burden of proof at trial.'"  *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned

on other grounds) (quoting *Celotex*, 477 U.S. at 322).  The "mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S.

at 247-48.  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-

moving party.  *See id.* at 248.  Furthermore, a material fact is determined by the substantive law at

issue.  *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at

248).  A fact is "material" if it might affect the outcome of the suit under governing law.  *Id.*

Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary

judgment.  *Anderson*, 477 U.S. at 248.

However, even if material facts remain disputed, summary judgment may be proper if, after

all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment

as a matter of law.  *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the

non-moving party has failed to make an adequate showing on an essential element of his or her case,

as to which he or she has the burden of proof.  *See Celotex*, 477 U.S. at 322-23.

12

C.    **Section 553(a)(3) – Right to Setoff**

In the first count of its amended complaint, MR alleges that a right of setoff is unavailable

to Rock-Tenn for failure to satisfy the mandate of section 553(a)(3) of the Bankruptcy Code, which

states:

> (a) Except as otherwise provided in this section and in sections 362
> and 363 of this title, this title does not affect any right of a creditor to
> offset a mutual debt owing by such creditor to the debtor that arose
> before the commencement of the case under this title against a claim
> of such creditor against the debtor that arose before the
> commencement of the case, except to the extent that –
>> (3) the debt owed to the debtor by such creditor was incurred
>> by such creditor –
>>> (A) after 90 days before the date of the filing of the
>>> petition;
>>> (B) while the debtor was insolvent; and
>>> (C) for the purpose of obtaining a right of setoff
>>> against the debtor.

11 U.S.C. § 553(a)(3) (2006).

The right to setoff is equitable in nature and within the discretion of the court. *See United

States v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 218 B.R. 324, 328 (D. Del.

1997). Setoffs allow "entities that owe each other money to apply their mutual debts against each

other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md.

v. Strumpf*, 516 U.S. 16, 18 (1995) (citing *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)).

The common-law right to setoff is preserved in bankruptcy under section 553(a) since there is no

federal right of setoff specifically created by the Bankruptcy Code. *Id*. at 289. The burden of proof

lies with the party asserting the right of setoff. *See In re Garden Ridge Corp.*, 338 B.R. 627, 632

(Bankr. D. Del. 2006) (citing *In re Lason, Inc.*, 314 B.R. 296, 305 (Bankr. D. Del. 2005)).

D.    **Section 547(b) – Preference Avoidance**

The third count of Plaintiff's amended complaint alleges that, notwithstanding section 553,

if a right of setoff exists or a setoff has already occurred then, the transfer was preferential and

avoidable under section 547(b), which specifically states:

> Except as provided in subsection (c) of this section, the trustee may
> avoid any transfer of an interest of the debtor in property—
>> (1) to or for the benefit of a creditor;
>> (2) for or on account of an antecedent debt owed by the
>> debtor before such transfer was made;
>> (3) made while the debtor was insolvent;
>> (4) made—
>>> (A) on or within 90 days before the filing of the
>>> petition; or
>>> (B) between ninety days and one year before the date
>>> of the filing of the petition, if such creditor at the time
>>> of such transfer was an insider; and
>> (5) that enables such creditor to receive more than such
>> creditor would receive if—
>>> (A) the case were a case under Chapter 7 of this title
>>> (B) the transfer had not been made; and
>>> (C) such creditor received payment of such debt to the
>>> extent provided by the provisions of this title.

11 U.S.C. § 547(b) (2006). The purpose of section 547's avoidance power is "to foster equality of

treatment among creditors and to discourage creditors from incapacitating a firm by racing to attach

its assets shortly before bankruptcy." *Trustee v. Mappa (In re Pineview Care Ctr., Inc.)*, 152 B.R.

703, 705 (D.N.J. 1993) (citation omitted). Pursuant to section 547(g), the trustee or the debtor-in-

possession bears the burden of proving avoidability of a transfer under section 547(b) by a

preponderance of the evidence. *See* 11 U.S.C. § 547(g); *Lease-a-Fleet, Inc. v. Mitsubishi

Acceptance Corp., (In re Lease-a-Fleet, Inc.)*, 151 B.R. 341, 349 (Bankr. E.D. Pa. 1993); *Aspen

Data Graphics, Inc. v. Boulton (In re Aspen Data Graphics, Inc.)*, 109 B.R. 677, 681 (Bankr. E.D.

14

Pa. 1990)*; see also* 11 U.S.C. § 1107 (providing debtor-in-possession with all rights, duties and functions of the trustee).

## E.    Insolvency Requirement

The common thread running through sections 553 and 547 is a determination of the Debtor's insolvency and each contains a rebuttable presumption of that insolvency. Specifically, both sections state "the debtor is presumed to be insolvent on and during the ninety days immediately preceding the date of the filing of the petition." 11 U.S.C. § 553(c); 11 U.S.C. § 547(f). A creditor may rebut the presumption of insolvency "by introducing some evidence that the debtor was not in fact insolvent at the time of the transfer. If the creditor introduces such evidence, the trustee must prove insolvency by a preponderance of the evidence." *Am. Classic Voyages Co. v. JP Morgan Chase Bank (In re Am. Classic Voyages, Co.)*, 367 B.R. 500, 508 (Bankr. D. Del. 2007) (quoting *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 34 (2d. Cir. 1996)). Thus, whether the debtor was insolvent on January 27, 2006, the date of transfer, is a threshold issue in this litigation.

When creditors address the rebuttable presumption of insolvency on summary judgment, "[t]he party seeking to rebut the presumption must introduce some evidence to show that the debtor was solvent *at the time of the transfer.*" *Bros. Gourmet Coffees, Inc. v. Armenia Coffee Corp. (In re Bros. Gourmet Coffee, Inc.)*, 271 B.R. 456, 458 (Bankr. D. Del. 2002) (quoting *Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Natural Gas Corp.*, 158 F.3d 312, 315 (5th Cir. 1998). Summary judgment may be granted for the trustee or debtor-in-possession "when the party seeking to rebut the presumption fails . . . or when there is no genuine issue of material fact concerning insolvency." *Id.*

15

The issue of the Debtor's insolvency is a mixed question of law and fact. *Id*. at 460 (citing *Moody v. Sec. Pac. Bus. Credit*, 971 F.2d 1056, 1063 (3d Cir. 1992). Pursuant to section 101(32)(A), a "fair valuation" of the Debtor's assets and liabilities is required when determining insolvency. *Id*. (citing *Travellers Int'l AG v. Trans World Airlines*, 134 F.3d 188 (3d Cir.)). To measure the "fair valuation," either a liquidation or going concern basis may be used. *See Heilig-Meyers Co. v. Wachovia Bank (In re Heilig-Meyers Co.)*, 319 B.R. 447, 457 (Bankr. E.D. Va. 2004) *aff'd* 328 B.R. 471 (E.D. Va. 2005). Specifically, "[i]f liquidation in bankruptcy was not 'clearly imminent' on the transfer date, then the entity should be valued as a going concern." *In re Am. Classic Voyages Co.*, 367 B.R. at 508 (citing *Travellers*, 134 F.3d at 193). Going concern value should be used until the debtor's business is "wholly inoperative [or] defunct" and "'as long as the amount it could realize from converting its assets to cash in the ordinary course of business exceeds the expenses of conducting business.'" *In re Am. Classic Voyages Co.,* 367 B.R. at 508 (quoting *Fryman v. Century Factors (In re Art Shirt Ltd., Inc.)*, 93 B.R. 333, 341 (E.D. Pa. 1988); *In re Heilig-Meyers Co.*, 319 B.R. at 457).

In *In re Brothers Gourmet Coffee, Inc.*, the Debtor's expert used a liquidation method of valuation while the opposing expert used a going concern valuation. *In re Bros. Gourmet Coffee*, 271 B.R. at 460. The court in that case noted: "In the face of two differing methods used for business evaluations, which suggest opposite conclusions on the issue of insolvency, summary judgment cannot be granted. The court is asked to compare apples to oranges." *Id.*

In the case at bar, Plaintiff's expert, Lawrence Leaf, relied upon a liquidation analysis for valuation while Defendant's expert, Charles Phillips, employed a going concern basis. By using different methods, both opinions regarding MR's insolvency reach different conclusions. Not

16

surprisingly, Plaintiff's expert determines MR was insolvent as of the transfer date and Defendant's expert makes the opposite conclusion.  Given the differing methods used and differing outcomes, a genuine issue of material fact clearly exists on Debtor's insolvency as of the transfer date.  *See In re Bros. Gourmet Coffee, Inc.*, 271 B.R. at 460.  Thus, Defendant's motion for summary judgment must be denied with respect to section 553(a)(3) and section 547(b) and the Court must hear testimony to evaluate admissibility and weight to be accorded to the testimony.

Recently, in *In re Iridium*, the Honorable James M. Peck, United States Bankruptcy Judge for the Southern District of New York, ruled that public market data was the best indicator of a company's fair value.  *Statutory Comm. of Unsecured Creditors of Iridium Operating LLC v. Motorola, Inc. (In re Iridium Operating LLC),* 373 B.R. 283, 291 (Bankr. S.D.N.Y. 2007).  There, similar to the instant matter, the committee's experts found the debtor to be insolvent using a discounted cash-flow analysis based on cash-flow projections, while the creditor's experts determined that Iridium was solvent using a market valuation theory based upon the capital market and public trading market data.  *Id*. at 292.  Relying upon the Third Circuit's decision in *VFB LLC v. Campbell Soup Co.*, the court stated: "[T]he public trading market constitutes an impartial gauge of investor confidence and remains the best and most unbiased measure of fair market value."  *Id.* at 293 (citing *VFB LLC v. Campbell Soup Co.,* 482 F.3d 624 (3d Cir. 2007).

Unfortunately while courts now find valuation based on the public markets to be most beneficial and accurate in determining insolvency as of a transfer date, unlike Iridium, this Debtor is not a public company and public market information is not available.  Even though the more sophisticated methods prescribed by the *Iridium* court do not fully apply here, the case is still instructive to the facts at hand.  After a lengthy trial in that matter, the court ruled that insolvency

had not been proven, remarking that "because of the way that the parties chose to present their theories of insolvency, the Court is unable to make any well-founding findings or conclusions as to this particular period of fairly conspicuous financial distress." *Id*. at 302. Here, the parties are asking this Court to make a similar determination well before the trial stage without the benefit of direct testimony tested by cross-examination. This Court finds significant issues of fact remain in the instant matter and the parties must proceed to trial on the threshold issue of insolvency. Trial will be the appropriate time to determine the reliability and credibility of their experts.

**F.        Section 553(b) – Pre-Petition Setoff Right**

In the Second Count of the Amended Complaint, MR seeks to exercise its right of setoff under section 553(b) or in the alternative under the Court's equitable power pursuant to section 105. Section 553(b) allows a trustee to "avoid a prepetition setoff that occurs within ninety days of bankruptcy, whether or not prearranged, to the extent of any increase during those ninety days of the amount of debt the creditor owed the debtor." *Trustee v. Mappa (In re Pineview Care Ctr., Inc.*), 152 B.R. 703, 708 (Bankr. D.N.J. 1993).

In the instant matter, there was no prepetition setoff. Thus, Plaintiff MR must rely upon its section 105 argument to void Defendant Rock-Tenn's setoff right. However, the Third Circuit has explicitly stated:

> The general grant of equitable power contained in Section 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself. . .When the Bankruptcy Code provides a specified means for a debtor to obtain a specific form of equitable relief, those standards and procedures must be observed.

*In re Combustion Energy, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004); *see In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2006); *In re VII Holdings Co.*, 362 B.R. 663, 669 (Bankr. D. Del. 2007)

("[T]he Court is reluctant to grant the . . . request to achieve a result otherwise inconsistent with the Code's statutory scheme.")  When the elements of section 553(b) cannot be satisfied, the court sees no equity, under these circumstances, to employ section 105 to do what cannot be accomplished by a fair reading of the statute.  Thus, Defendant's motion for summary judgment is granted with respect to section 553(b) and the Second Count of Plaintiff's Amended Complaint is hereby dismissed.

## G.    Fraudulent Conveyance under New Jersey Law

The Fourth Count of Plaintiff Amended Complaint is based upon New Jersey's Uniform Fraudulent Transfer Act. *See* N.J. Stat. Ann. § 25:2-27 to -29.  Under New Jersey law, a transfer is deemed fraudulent if the transferor made the transfer while insolvent and the transferor received less than "reasonably equivalent value." *See* N.J. Stat. Ann. § 25:2-27(a); *see also Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325, 1331 (11th Cir. 2007) (examining the New Jersey statute).  New Jersey statutory and case law do not concretely define "reasonably equivalent value."  *See VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007).

The analysis for "reasonably equivalent value" requires the determination of whether the Debtor received any value and then whether that value was "reasonably equivalent to the value transferred."[1] *Litig. Trust of MDIP Inc. v. De La Rue Cash Sys., Inc. (In re MDIP Inc. f/k/a Mosler,*

---

[1] Fraudulent transfer claims under the Bankruptcy Code and under New Jersey state law require almost identical analysis. *See Lowenschuss v. Resorts Int'l Inc. (In re Resorts Int'l Inc.)*, 181 F.3d 505, 514 n.6 (3d Cir. 1999). The Third Circuit articulated: "We think the New Jersey Supreme Court would agree with the "common sense" approach we have used to determine 'reasonably equivalent value' under the bankruptcy code's similar fraudulent transfer provision, 11 U.S.C. § 548(a)(1)(B)(I)." *VFB LLC*, 482 F.3d at 631 (citations omitted). Therefore, cases analyzing reasonably equivalent value under the Bankruptcy Code are applicable to N.J. Stat. Ann. § 25-2:27.

*Inc.)*, 332 B.R. 129, 133 (Bankr. D. Del. 2005).  The Third Circuit explicitly states: "[R]easonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'"  *VFB LLC*, 482 F.3d at 631 (citation omitted). Measuring "reasonably equivalent value" focuses on the totality of the circumstances. *MDIP*, 332 B.R. at 133 & n.2.  "Reasonably equivalent value" is largely a factual question.  *Id.* at 133 (citing 5 Collier on Bankruptcy ¶ 548.05 (15th ed. rev. 2005) ("Whether the transfer is for a reasonably equivalent value in every case is largely a question of fact, as to which considerable latitude must be allowed to the trier of facts.")).

In the instant matter, several elements of the fraudulent transfer claim are disputed.  As discussed above, whether MR was insolvent as of the transfer date is a genuine issue of material fact. In addition, both parties contest the amount of value received under the "reasonably equivalent value" analysis.  Defendant argues that satisfaction of an antecedent debt serves as value, while Plaintiff concedes that it was agreed that cash would not be transferred but rather Defendant would setoff its obligations to MR.  Plaintiff contends that regardless of whether cash was received, the value that was exchanged needs to be determined by the trier of fact.  Thus, material fact issues exist and MR's motion for summary judgment is denied with respect to the fraudulent transfer claim under New Jersey state law.

## **Conclusion**

For the reasons stated above, neither Rock-Tenn's nor MR's expert will be excluded from testifying at trial.  Defendant's motion for summary judgment is granted with respect to the section 553(b) claim and the Second Count of Plaintiff's Amended Complaint is hereby dismissed.

Defendant's motion for summary judgment is denied on the section 553(a)(3), section 547(b), and

New Jersey state law fraudulent transfer claims as genuine issues of material fact exist.

An Order in conformance with this Opinion has been entered by the Court and a copy

attached.


/s/ *Donald H. Steckroth*

_____

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE


Dated:  October 27, 2009